IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CLAUDE WILKINSON, GARY A. )
WILLIAMS, and DIXIE WILLIAMS, )
                                             )
                      Plaintiffs, )
                                             )
            vs. )   Case No. CIV-10-0392-C
                                               )
JOHN W. BODE, Individually, and )
DENISE A. BODE, Individually, )
                                             )
                      Defendants. )

**MEMORANDUM OPINION AND ORDER**

      Defendants were owners of a tract of real estate in Canadian County, Oklahoma. Desiring to sell the property, Defendants placed the property on the market and eventually entered into a contract with Plaintiffs for the sale of the property. The contract was entered into on January 14, 2008, with a scheduled closing date of February 29, 2008. Despite the agreement, Plaintiffs were unable to secure financing to complete the sale. Defendants generously granted numerous extensions of the closing date. However, Defendants eventually terminated the contract in accordance with its terms. Plaintiffs signed a waiver recognizing the termination and the forfeiture of their earnest money. Plaintiffs then made a second offer to purchase the property. According Plaintiffs, Defendants accepted this offer but failed to close the sale. Relying on the alleged second contract, Plaintiffs filed the present action, asserting claims for breach of contract. Defendants filed a counterclaim for distraint, based on the trespass of livestock which Plaintiffs allegedly placed on Defendants' property without permission.

Arguing the undisputed material facts entitle them to judgment, Defendants filed a Motion for Summary Judgment seeking a determination that no second contract existed, that they are entitled to monetary damages for the trespass of the cattle, and seeking judgment in their favor on these issues. Plaintiffs object, arguing the parties entered into a new contract in July of 2008 and that Defendants are in breach for failure to fulfill that contract.[*]

The following facts are undisputed:

On January 14, 2008, Plaintiffs submitted an offer to purchase the property from Defendants. On January 24, 2008, Defendants accepted the offer and executed the contract for sale. The contract was to close on February 29, 2008. On February 29, 2008, Plaintiffs failed to secure adequate funding to close the contract; however, Defendants agreed to extend the time for closing. That extension was until May 30, 2008. When that date came and passed with no funding by Plaintiffs, Defendants agreed to a second extension granting a new closing date of June 12, 2008. Once again, on June 12, 2008, Plaintiffs failed to close the contract. Defendants once again granted an additional extension of time, agreeing to a fourth closing date of June 30. That date came and went without Plaintiffs securing the funding necessary to close the contract. On July 9, the transactional broker sent a notice of breach to Plaintiffs, advising them that they had breached the contract and therefore forfeited the earnest money posted. That letter further advised Plaintiffs that if they were still interested

---

[*] Plaintiffs' response brief is in violation of LCvR56.1(c), in that it fails to contain a section setting forth the material facts to which the parties assert a genuine issue of fact exists. Accordingly, for purposes of this Order, the Court has deemed those well-supported facts submitted by Defendants as admitted.

in completing the contract, they would have to submit a new offer. On July 21, 2008, Plaintiffs signed the waiver and objection to the forfeiture of the earnest money. On that same date, Plaintiffs submitted a new offer for purchase to Defendants, along with a second earnest money deposit. On approximately July 15, 2008, Plaintiffs placed 128 head of cattle on Defendants' property without Defendants' authority. Plaintiff Gary Williams admitted that he had placed the cattle on the property. However, the date the cattle were removed is in dispute. The accepted and common rate for pasture lease in Canadian County is $3.00 per day per animal.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The opposing party must then refute this showing "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling

Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## **DISCUSSION**

Defendants argue they never executed or accepted the July 21, 2008, offer; that the only contract entered into between the parties was the January 24, 2008, contract, which was terminated according to its terms on July 21, 2008. Thus, according to Defendants there was no contract and consequently there could be no breach. In contrast, Plaintiffs argue the existence of two purported contracts which could be enforced. First, Plaintiffs contend that the letter sent by the transactional agent on July 9, 2008, was not a termination of the contract but rather provided a mechanism by which Plaintiffs could cure their earlier breach. In the alternative, Plaintiffs argue a "contract" was entered into on April 29, 2008, and signed on behalf of Defendants by the transactional broker

Ultimately each of Plaintiffs' arguments fails for lack of evidence. As for the purported April 29, 2008, contract: Plaintiffs argue the contract was accepted on behalf of Defendants by the transactional agent, as evidenced by her signature on the document. However, the document clearly indicates that the agent's signature served only as a receipt of a $5,000 earnest money deposit. Nothing in the signature nor the surrounding text of the

4

contract could be found by any reasonable juror to support acceptance of the contract by Defendants. Even were the document by some measure deemed a contract, the closing date on that document is clearly stated as Friday, May 30. By Plaintiffs' own admission, no attempt at closing was made on that date and therefore even were the Court to construe the April 29th document as a contract for sale, Plaintiffs would be in breach for failure to close in accordance with the terms of the "contract." Consequently, Plaintiffs could not now seek to enforce that document against Defendants.

Plaintiffs next point to the July 9, 2008, letter from the transactional agent, arguing that it notified them of the breach, along with a mechanism for curing that breach. Again, no reasonable juror could read the document to support such an argument. First of all, the last sentence of the second paragraph of the document (Dkt. No. 32, Exh. 5) states, "Thus, I regret to inform you that you are in breach of the purchase agreement." The next paragraph states, "Sellers are now entertaining discussions with other prospective purchasers of the property. If you have further interest in purchase of this property, please sign the waiver statement below and submit a new purchase **offer**." (emphasis added). The plain language of this document offers Plaintiffs nothing more than an opportunity to submit a new offer. No reasonable juror could interpret any of the language in this document to provide an agreement by Defendants to sell the property or agree to the terms of some as-of-yet unmade offer. Finally, the Plaintiffs argue that they were notified by the transactional broker, presumably at the request of the Defendants, that the property would close on July 25, 2008. However, a close reading of the affidavit submitted by Plaintiffs offers no support for their

assertion that the transactional agent made the statement. Rather, the affidavit clearly states that the statement was made by an employee of the title company, who notified Plaintiffs of the purported acceptance of the July offer and that a closing would occur on the 25th. Plaintiffs offer no evidence that the employee of the title company who allegedly made the statement was in any way authorized by Defendants. Further, the alleged statement by the title company employee is hearsay and consequently insufficient evidence. See Thomas v. IBM, 48 F.3d 478, 485 (10th Cir. 1995) ("hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'" (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990))).

The evidence before the Court supports a finding of the existence of only one contract, that entered into on January 14, 2008. That contract was terminated on July 9, 2008, when Plaintiffs failed to close as outlined in the contract. Even when viewed in a light most favorable to Plaintiffs, the remaining evidence before the Court supports, at most, an additional offer made by Plaintiffs on July 21, 2008, which was never accepted by Defendants.

Under Oklahoma law, the essential elements for the formation of every contract are: parties capable of contracting, consent, a lawful object, and sufficient cause or consideration. 15 Okla. Stat. § 2. Plaintiffs' arguments regarding the oral agreements between the parties regarding extending the closing date as sufficient to remove the contract from operation of the statute of frauds are simply immaterial, as Plaintiffs have not and cannot provide

6

evidence of the existence of a valid contract for sale of the property. Additionally, none of the questions of fact argued by Plaintiffs in their response brief are supported by the evidence before the Court. Rather, they are, at best, distortions of fact and unsupported attempts to breathe life into a nonexistent case. Consequently, Defendants are entitled to entry of judgment in their favor on Plaintiffs' claims.

As for Defendants' counterclaims: It is undisputed that Plaintiffs placed cattle on Defendants' property without permission. Oklahoma law provides a mechanism to recover for such trespass:

> A. Within forty-eight (48) hours after stock has been distrained, Sunday not being included, the party distraining, or such party's agent, shall notify the owner of the stock when known, or, if unknown, the party having them in charge. If the owner fails to satisfy the person whose lands are trespassed upon, the party injured shall, within twenty-four (24) hours thereafter, notify in writing the county sheriff to come upon the premises to view and assess the damages.
> B. The county sheriff shall, within forty-eight (48) hours after receiving such notice, Sundays and holidays excepted, proceed to view and assess the damages, and determine a reasonable amount to be paid for seizing and keeping said stock. If the person owning the distrained stock fails to pay the damages as assessed, the sheriff shall provide for the public notice and sale of the distrained stock as provided by Section 85.6 of this title.
> C. Any money or stock left after satisfying such claims shall be returned to the owner of the stock sold.

4 Okla. Stat. § 135. The evidence before the Court establishes that Defendants complied with the requirements of this statute. It is also undisputed that the custom in Canadian County, the location of the trespass, is to pay $3.00 per day per head for cattle grazing. However, the length of time the cattle were on Defendants' land is in dispute. Plaintiff's affidavit relays a different date for placing the cattle and removing the cattle than that

asserted by Defendants. Accordingly, the amount of damages Defendants are entitled to recover for the trespass of the cattle is in dispute, and must be resolved by a jury.

## **CONCLUSION**

As set forth more fully herein, Defendants' Motion for Summary Judgment (Dkt. No. 27) is GRANTED in part. Defendants are entitled to judgment on Plaintiffs' claims. A jury trial will be held on the amount of damages Defendants are entitled to recover on their counterclaim. A separate judgment will enter at the close of this case.

IT IS SO ORDERED this 24th day of May, 2011.

ROBIN J. CAUTHRON
United States District Judge